# Catholic Knights *v.* Kuhn.

## (*Nashville.*   February 13, 1892.)

1. LIFE INSURANCE.  *Constitution and by-laws of mutual benefit associations constitute part of contract.*

   The constitution and by-laws of a mutual benefit association are, by implication, imported into and become part of the contract of insurance made by it upon the life of a member.

   Case cited and approved: Tennessee Lodge *v.* Ladd, 5 Lea, 720.

2. SAME.  *Construction of mutual benefit certificates.*

   In 1882 H., being a member of a mutual benefit association, procured the issuance of a benefit certificate upon his life for $2,000. This certificate was made payable to his brother.  In 1887 H. voluntarily, but without his brother's consent, surrendered this certificate and obtained another for a like sum payable to himself.  This latter certificate he bequeathed to K.  At date of issuance of the first certificate the "laws of the order" prescribed that a certificate could be surrendered and changed only "with the consent of the beneficiary indorsed."  Another provision of these laws was that any law of the order might "be amended at any regular meeting of the supreme council."  After issuance of the first certificate to H., and before the issuance of the second, the laws were amended so as to authorize change and substitution of certificates without consent of the beneficiary.

   *Held*: That K., the legatee under H.'s will, was entitled to the $2,000 fund.  The brother's interest was defeasible, and was defeated by substitution of the new certificate after the change in the laws of the order.

   Cases cited and approved: 8 S. W. R., 38;  28 Minn., 449;  63 N. H., 535;  3 S. W. R., 427.

3. SAME.  *Bequest of benefit certificate valid.*

   And the assured may dispose, by will, of such benefit certificate where it is, upon its face, made payable to himself.

Cases cited and approved: Rison *v.* Wilkerson, 3 Sneed, 565; Tennessee Lodge *v.* Ladd, 5 Lea, 721; Williams *v.* Carson, 2 Tenn. Ch., 269; Weil *v.* Trafford, 3 Tenn. Ch., 108.

4. SAME. *Same.*

And no question can be made in such case as to the legatee's insurable interest in the deceased.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

FRANK JOHNSON and E. L. GREGORY for Complainants.

J. W. BONNER and BRYAN & CARTWRIGHT for Defendants.

CALDWELL, J. This is a bill of interpleader, filed by the Catholic Knights of America, a mutual benefit association, against C. B. Kuhn and William Huppert, to have the Court determine which of the two defendants is entitled to the proceeds of a $2,000 benefit certificate, issued by complainant to Peter Huppert, deceased, upon his life.

At different times, during his membership in the association, Peter Huppert held two of its benefit certificates; one issued April 18, 1882, the other

June 28, 1887. The first one was payable, on its face, to defendant, William Huppert, a brother of the assured; but, after running about five years, it was voluntarily surrendered by Peter Huppert, and, at his instance, the second one was issued in its stead, payable to the assured himself as beneficiary. This second certificate the assured bequeathed to the other defendant, C. B. Kuhn, charged with certain debts and trusts mentioned in his will.

After the death of Peter Huppert each of the defendants claimed the $2,000. Thereupon this bill was filed, and the defendants became the active and adverse parties in the litigation.

William Huppert, in his answer, averred that he took a vested interest in the first certificate, of which he could be deprived only by his consent, and that the attempted change in the beneficiary was illegal and void, because made without his consent.

Kuhn, answering, insisted that the change was authorized by the law of the order, that it was regularly made, and that he was entitled, under the will, to receive the fund. The Chancellor's decree was in favor of Kuhn, and Huppert appealed.

The constitution and by-laws of the order, so far as applicable, entered into and formed part of the contract with Peter Huppert; those laws, in connection with the words of the certificate, constituted the contract of insurance in its proper and legal sense. Bacon on Benefit Societies and Life Insurance, Secs. 161, 184, 185.

Though not stated in so many words, this rule of construction was recognized and applied by this Court in *Tennessee Lodge* v. *Ladd*, 5 Lea, 720, 721.

The language of the first certificate, with reference to the member's right to change beneficiaries, is as follows:

"Said Peter Huppert shall have the right, during his membership in the order, to surrender this certificate and receive a new one; and may substitute another beneficiary or beneficiaries therein, if he so desires, by complying with the laws of the order upon this subject." .

"The laws of the order" then existing, prescribed the mode of substitution, and authorized it to be made *only* "with the consent of the beneficiary indorsed" on the certificate surrendered.

In this case it turns out, as a matter of fact, that William Huppert, the beneficiary in the first certificate, not only did not consent to the change in the manner prescribed, but he had no notice whatever that a change was contemplated, and never in any way assented to the issuance of the second certificate.

Therefore it would seem, nothing else appearing, that he was not bound by the change, and that the second certificate was illegal and void, because issued without the requisite authority. But there was another law of the order which likewise formed an important part of the contract, and that was that *any* of its laws might "be amended at any regular meeting of the supreme council."

That provision, as well as the one allowing a change only "with the consent of the beneficiary," is to be considered in connection with the words of the certificate; it, too, was a part of the contract in which William Huppert was named as beneficiary. From this it follows, necessarily, that he, as beneficiary, had no fixed and unalterable rights, and none that he could make so by simply failing or refusing to consent to the substitution of another beneficiary in his stead. All his rights were subject to the order's reserved power of amendment. The contract, as gathered from the terms of the certificate and the laws of the order applicable thereto, was (1) that, in case Peter Huppert, the assured, should die before changing the beneficiary, William Huppert should receive the $2,000; (2) that a change of beneficiary, as the law then existed, could be legally effected only by and with the consent of William Huppert indorsed on the certificate, and (3) that the existing requisites to a valid change of beneficiary were subject to amendment by action of the supreme council of the order issuing the certificate.

Subsequently, in May, 1885, the supreme council, in exercise of that reserved right, *did* amend the law relating to the substitution of one certificate for another one, so as to authorize a change of beneficiary *without* the consent of the beneficiary named in the certificate surrendered. Two years after that amendment, and in strict conformity to the requirements of the law as amended, the

first certificate taken out by Peter Huppert was surrendered and the second one issued in its room and stead. Thus the first certificate ceased to have any legal existence, and the second one came into full force and virtue. By the substitution the conditional or contingent right of William Huppert, as beneficiary, was entirely extinguished, and the order became bound according to the terms of the second certificate, which was outstanding and in the hands of the assured at the time of his death. This conclusion is inevitable, when it is considered that the laws of the order are, by implication, imported into and made part of the contract.

*Byrnes* v. *Casey,* 8 S. W. R., 38, is a case precisely in point. There, as here, the question was upon a substituted certificate, issued by the Catholic Knights of America, the change having been made without the consent of the beneficiary named in the first certificate, but after an amendment dispensing with the necessity of such consent. The substitution was held to be legal, and to deprive the first named beneficiary of all right of participation in the fund. See also, to substantially the same effect, *Richmond* v. *Johnson,* 28 Minn., 449; *Barton* v. *Association,* 63 N. H., 535; Bacon, Secs. 305–307; *Schillinger* v. *Boes,* 3 S. W. R., 427.

The second certificate before us, being payable' on its face to Peter Huppert, the assured, was a part of his property, and as such subject to dis-

position by will. *Rison* v. *Wilkerson,* 3 Sneed, 565; *Williams* v. *Carson,* 2 Tenn. Ch., 269; *Weil* v. *Trafford,* 3 Tenn. Ch., 108; *Tennessee Lodge* v. *Ladd,* 5 Lea, 721.

Having been bequeathed to Defendant Kuhn, he became the lawful owner of it, and is entitled to receive its proceeds, subject to the debts and trusts mentioned in the will.

Appellant's contention that Kuhn can, at most, take only a sufficiency of the fund to pay debts due him, on the ground that such sum was the measure of his insurable interest in the deceased, is not well made. The rule of law invoked has no place in a case like this. Kuhn takes the fund, not because of *any* insurable interest in the life of Peter Huppert, but alone as legatee or beneficiary under his will.

Affirm.